**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

ROBERT MATTHEW NICKSIC,      )
                                    )
      Plaintiff,               )
                                      )
      v.                         )      CAUSE NO.: 2:12-CV-410-TLS
                                        )
CAROLYN COLVIN, Acting        )
Commissioner of Social Security    )
Administration,               )
                                      )
      Defendant.             )

**OPINION AND ORDER**

The pro se Plaintiff, Robert Matthew Nicksic, asks this Court to review the

Commissioner's final decision denying his application for disability insurance benefits and

supplemental security income benefits. *See* 42 U.S.C. § 405(g). The Plaintiff argues that the

Administrative Law Judge (ALJ) gave too much weight to a Consultative Examination Report

from April 2010, and a Physical RFC Assessment dated May 2010. He submits that the reported

findings were not supported by medically acceptable clinical and laboratory diagnostic

techniques.

**BACKGROUND**

The Defendant complains of several physical issues, including back and neck pain,

hemorrhoids, plantar warts, a sprained right wrist, a pinched nerve, and an irregular heartbeat.

The ALJ who considered the Plaintiff's disability claim determined that only the hemorrhoids

qualified as a severe impairment. *See* 20 C.F.R. § 404.1520(c). The ALJ noted that the back and

neck pain and pinched nerve had been ongoing for several years prior to the alleged onset date of

disability, yet the Plaintiff continued to work multiple jobs, and that 2008 imaging of the cervical

and thoracic spine showed only mild degenerative changes, with no herniation. The ALJ cited an

April 2010 report by Dr. J. Smejkal as further evidence that was consistent with a finding that

the impairment due to neck and back pain was nonsevere. The ALJ found that the irregular

heartbeat, plantar warts, and sprained wrist were all non-medically determinable impairments,

and there were no recorded complications from the Plaintiff's benign essential hypertension.

With respect to the Plaintiff's mental impairment, the ALJ did not find the Plaintiff's depression

to be severe, as he had no history of mental health treatment and consultative exams by three

psychologist only pointed to mild limitations.

With respect to the Plaintiff's hemorrhoids, the ALJ found that they did not, either alone

or in combination with another impairment, meet or medically equal one of the listed

impairments. The ALJ considered Listing 8.04 for chronic infections of the skin or mucus

membranes, which requires evidence of fungating or extensive ulcerating skin lesions that persist

for at least three months despite continuing treatment as prescribed. The ALJ noted that the

Plaintiff did not obtain ongoing treatment for his hemorrhoids, and that there was no evidence

that the Plaintiff had extensive skin lesions.

The ALJ found that the Plaintiff had the residual functional capacity (RFC) to lift or

carry 50 pounds occasionally and 25 pounds frequently, stand or walk about six hours in a

normal work day, and sit for about six hours, all with normal breaks. He determined that the

Plaintiff's hemorrhoids, while severe, did not produce limitations that would preclude all work.

The ALJ gave great weight to the opinion of state agency physician, Dr. R. Bond, which was

affirmed by a subsequent state agency physician. Neither the chronic hemorrhoids nor the back

pain had prevented the Plaintiff from working a part-time job or caring for his mother, including

shopping, driving her to appointments, picking up prescriptions, and doing housework, laundry, and cooking. The Plaintiff cited financial reasons for not seeking medical treatment, but the ALJ noted that even when the Plaintiff was fully employed and had health insurance he did not obtain treatment. The ALJ concluded that the extreme nature of the Plaintiff's complaints did not correspond to clinical findings on exam or the objective medical evidence.

Relying on the testimony of a vocational expert, the ALJ found the Plaintiff capable of performing past relevant work as an auto parts counter person, electrical component rebuilder, and merchandise delivery person at light to medium exertional levels.

## ANALYSIS

This Court reviews the ALJ's decision only to ensure that it is supported by substantial evidence, see 42 U.S.C. § 405(g); *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971). That standard of review precludes the reviewing court from conducting its own analysis of whether the claimant's impairments are disabling or from reweighing the evidence, resolving conflicts in the record, or making independent credibility assessments. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Instead, the court is tasked with ensuring that the ALJ adequately discussed the issues and built the requisite "logical bridge" between the evidence and his conclusion. *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

One piece of evidence considered by the ALJ was the Report that Dr. Smejkal prepared in April 2010 upon examination of the Plaintiff, and at the request of the Disability

Determination Bureau.  His Report noted the Plaintiff's history of back problems, hemorrhoids,

plantar warts, sprained wrist, and neck pain. He noted that the Plaintiff recounted longstanding

back problems and claimed that pain prevented him from standing for any length of time or

lifting anything. According to the Report, the Plaintiff also claimed that hemorrhoids caused

severe rectal bleeding with any bowel movement and with extended activity, but that there was

no mucus in the stool. The physical examination of the Plaintiff revealed nothing significant.

> Dr. Smejkal's Report noted the following regarding the Plaintiff's gait:

> He has normal gait. He is able to stoop and squat with difficulty. He is able to
> walk heel to toe and tandemly without difficulty. He is able to get on and off the
> examination table without difficulty and did not require assistance. He is able to
> stand from a sitting position without difficulty.

(R. at 361.) The Plaintiff objects to the ALJ's reliance on Dr. Smejkal's assessment that the

Plaintiff had a normal gait because, according to the Plaintiff, he was seated when the doctor

arrived in the examination room and only saw him take a few short steps. The Plaintiff's

argument appears to be that the ALJ should have discounted Dr. Smejkal's observations and

relied instead on the Plaintiff's March 5, 2010, statements to emergency department personnel at

St. Mary Medical Center. The Plaintiff visited the emergency department four days after he

twisted his back while getting out of his car. He explained that he had a history of back pain and

had radiating pain in his right leg. The Plaintiff reported that he was unhappy he did not get a

referral at the doctor's office, but was "blown off regarding my back pain." (R. at 352.)

According to the emergency department notes, the physical exam conducted during this

emergency room visit noted an "intact normal gait." (*Id.*)

In his appeal to this Court, the Plaintiff also argues that the ALJ should not have relied on

the range of motion chart included in Dr. Smejkal's Report to find that the Plaintiff had full

range of motion. He maintains that Dr. Smejkal did not perform objective testing and there were

"no documented means of measurement . . . recorded to determine active mechanical range of

motion." (Pl.'s Opening Brief 3, ECF No. 18.) The Plaintiff refers the Court to the "incomplete

range of motion chart." (*Id.*)

A review of the administrative record shows that Dr. Smejkal drew a vertical pen line

next to the areas to be tested on the range of motion chart. He did not provide the degrees of

remaining motion for any of the listed joints. Although the line that is provided on the form to

document the means of measurement was left blank, Dr. Smejkal signed and dated the bottom of

the page under the text explaining that "*ALL areas left blank are normal as* per the standards of

the American Association of Orthopedic Surgeons. With my signature, I attest to the fact that

this individuals [sic] <u>active mechanical range of motion</u> was measured." (R. at 363.) It was thus

reasonable to believe that Dr. Smejkal performed objective testing. Moreover, the Plaintiff has

not pointed to any medical sources that are inconsistent with Dr. Smejkal's findings or to sources

that he contends should have been given greater weight concerning these matters.

The Report was sufficient for a reasonable person to accept as adequate support for the

ALJ's decision. Moreover, the ALJ adequately explained his reasoning with respect to the

Plaintiff's claimed limitations due to back pain when he stated:

> The extreme nature of the claimant's subjective complaints do not correspond to
> clinical findings on exam or the objective medical evidence. At both his
> consultative exam in April 2010 and most recent exam on June 8, 2011, just days
> before the hearing, the clinical findings on exam were completely normal, except
> for a finding of mild point tenderness (Ex. 10F). The undersigned did consider the
> claimant's unlikely testimony that he was not diagnosed properly in the
> emergency room, by the consultative medical examiner, or by either of his
> treating physicians in May and June 2011, but the undersigned is not convinced
> that all of these health care providers failed to diagnose and/or treat the claimant
> appropriately.

(R. at 105.) An ALJ may credit doctors' statements over a claimant's testimony. *See Jones v. Astrue*, 623 F.3d 1155, 1161–62 (7th Cir. 2010). The ALJ also considered the Plaintiff's part time work as a delivery driver, and the other daily activities he engaged in as he helped care for his mother. The ALJ noted that, despite the fact that the Plaintiff's complaints of back pain were longstanding, he had no record of ongoing treatment, even during the period of time that he was fully employed and had health insurance. When the Plaintiff was told about hamstring exercises in June 2011 to address his complaints of chronic low back pain, the record reveals that he stated he was "not interested" and "just want[ed] note saying he needs medical care." (R. at 105, 395.) The ALJ was not wrong to question the Plaintiff's subjective complaints given the number of daily activities he performed, his part-time employment, his failure to seek treatment, and the lack of "medical signs and laboratory findings demonstrating the existence of a medically determinable physical . . . impairment that could reasonably be expected to produce the symptoms." (R. at 105.)

The Plaintiff also challenges Dr. Smejkal's findings regarding the severity of the Plaintiff's rectal bleeding. He argues that Dr. Smejkhal's statement that there was blood, but no mucus, in the stool due to hemorrhoids "gives the wrong impression of the severity" of the problem. He points to a combination of documents, presented for the first time to the Appeals Council, that he maintains show a more extreme condition. First, in August 2007, he was diagnosed with internal hemorrhoid disease after a colonoscopy. A possible hemorrhoidectomy was suggested as a treatment. Then, in January 2012 (after the ALJ's decision) he visited a general surgeon complaining of rectal bleeding with severe rectal pain and discomfort. The examination revealed enlarged hemorrhoidal tissue that was prolapsing out of his rectum, which

would require surgery to remove. There was no clear cut evidence of a full rectal prolapse, and only additional testing could provide such evidence. He argues that he suffers from the same medical problem five years after his initial diagnosis, and that the pain and limited mobility prevent him from obtaining substantial gainful employment.

The 2012 documentation does not addresses the Plaintiff's condition at the time his application was under consideration. *See Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005).[1] A social security claimant bears the burden of supplying evidence to prove his claim of disability. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). The records that were before the ALJ substantially supported his conclusion that the Plaintiff's hemorrhoids did not meet or medically equal a listed impairment. The records also substantially supported his conclusion that the Plaintiff's hemorrhoids, while severe and requiring some exertional limitations, would not prevent him from engaging in substantial gainful work. None of the documentation before the ALJ—or even the 2007 colonoscopy report presented for the first time to the Appeal Council—showed a continuity of treatment or a clear treatment plan. The Plaintiff presented as "highly functional with few objective medical findings." (R. at 104.) Physical residual functional capacity assessments completed in May 2010 and affirmed August 18, 2010, and August 24, 2010, all lend substantial support the ALJ's RFC findings. *See generally* 20 C.F.R. § 416.927(f)(2)(i) (stating that "[s]tate agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists

---

[1] "A reviewing court may order additional evidence to be taken before the Commissioner upon a showing that there exists 'new evidence which is material and that there is good cause for the failure to incorporate such evidence  into the record in a prior proceeding.'" *Schmidt*, 395 F.3d at 741–42 (quoting 42 U.S.C. § 405(g)). If the evidence was not relevant to the claimant's condition during the time period encompassed by the disability application, it cannot be considered material. *Id.* at 742.

who are also experts in Social Security disability evaluation"). The Vocational Expert identified

several light to medium exertional level jobs that the Plaintiff could perform at substantial

gainful activity levels. On appeal, the Plaintiff does not suggest what aspects of these jobs he

would be unable to perform due to his hemorrhoid disease.

In the other issue he presents for review, the Plaintiff objects to the ALJ's reliance on the

Physical Residual Functional Capacity Assessment prepared by Dr. R. Bond in May 2010. He

asserts that it was not based on "objective testing" and there was "no documented means of

measurement." (Pl.'s Opening Brief 2, ECF No. 18.) He further argues that the facts cited as

evidence all predate the alleged onset date of his disability, which was July 15, 2009. The Court

finds that the Plaintiff's argument is without merit. Other than his own assessment of his

limitations, which the ALJ properly addressed in the context of the entire record, the Plaintiff has

not pointed to any medical evidence in the administrative record that contradicts the Physical

RFC Assessment. In comparison, the ALJ built an accurate and logical bridge between the

medical record and the decision to account for the Plaintiff's impairments by limiting him to

lifting or carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking

with normal breaks for a total of 6 hours in an 8 hour workday; and sitting with normal breaks

for a total of about 6 hours in an 8 hour workday.

The Plaintiff's arguments are an invitation for this Court to reweigh the evidence and

substitute its judgment for that of the ALJ, which is not a proper reviewing function. *See Nelson

v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997). Because the conclusion the ALJ reached was

supported by substantial evidence, it cannot be disturbed by this Court and there is no basis to

remand this matter to the ALJ.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED. The Clerk is

DIRECTED to ENTER JUDGMENT in favor of the Defendant and against the Plaintiff.

SO ORDERED on January 8, 2014.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION
